IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| KHALIL HAMMOND, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-CV-00952-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT M. KRAK, D.M.D.; SUPERINTENDANT LOUIS FOLINO, IRMA VIHLIDAL, HELATH CARE ADMINISTRATOR; JOHN E. WETZEL, SECRETARY OF CORRECTIONS; DORINA VARNER, CHIEF GRIEVANCE OFFICER; DR. BALAS, D.M.D.; VICTORIA STANISHEFSKI, HEALTH CARE ADMINISTRATOR; AND THE BUREAU OF HEALTH CARE SERVICES, THROUGH IT'S DIRECTOR JOHN DOE; | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, Chief United States Magistrate Judge.

### I. INTRODUCTION

This prisoner civil rights action was initiated by Plaintiff Khalil Hammond, proceeding *pro se* against Defendants Robert M. Krak, D.M.D. ("Dr. Krak"), Superintendent Louis Folino ("Superintendent Folino"), Health Care Administrator Irma Vihlidal ("Administrator Vihlidal"), Secretary of Corrections John E. Wetzel ("Secretary Wetzel"), Chief Grievance Officer Dorina Varner ("Grievance Officer Varner"), Dr. Balas, D.M.D. ("Dr. Balas"), Health Care Administrator Victoria Stanishefski ("Administrator Stanishefski"), and the Bureau of Health Care Services for

---

[1] All represented parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

the alleged mistreatment of Plaintiff's dental issues. Presently for disposition is Defendants' collective motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff Khalil Hammond is a prisoner currently housed at State Correctional Institution ("SCI") at Fayette in Pennsylvania. In his Amended Complaint, Plaintiff generally asserts that the Defendants violated his First, Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, asserts that Defendants violated his rights under the Pennsylvania constitution, and asserts that Defendants were negligent, committed professional malpractice and conspired together under state law in connection with dental care and treatment he received during his incarceration at SCI-Greene from June 2013 through December 2013 and at SCI-Frackville from October 2014 through June 2015.

### a. *State Court Litigation*

Prior to filing the instant federal lawsuit, on or about May 13, 2015, Plaintiff initiated a lawsuit in the Court of Common Pleas of Greene County, Pennsylvania against Dr. Krak, Superintendent Folino, Secretary Wetzel, Officer Varner and John and Jane Does 1 through 3 who were alleged to have been DOC employees and "persons responsible for screening, training or supervising dental personel(sic) and or officials named in this complaint." Pl.'s State Court Compl. (ECF No. 39-4) at ¶ 8. In his state court complaint, Plaintiff alleged that on June 28, 2013, he had been treated by Dr. Krak who informed him that he needed a tooth pulled because it had abscessed and Plaintiff agreed to have his tooth pulled. *Id.* at ¶¶ 10-13. Plaintiff says that the tooth that Dr. Krak pulled had been giving him issues for two and a half months and believed it was because his

filling had come out and food particles were stuck inside the opening. *Id*. at ¶¶ 14-15. Plaintiff alleged that the reason that he needed the tooth pulled was because of a lack of appropriate and timely dental care and he filed Grievance No. 464603 regarding the allegedly delayed dental treatment. *Id*. at ¶ 16. Plaintiff alleged that prison officials responded to his grievance and informed him that any delay in dental treatment was due to Plaintiff being housed in the Restricted Housing Unit (RHU). *Id* at ¶¶ 17-19.

Further, Plaintiff alleged in the state court complaint that on or about July 5, 2013, he was again seen by Dr. Krak who informed Plaintiff that he would be receiving a root canal procedure. Plaintiff alleged that forty-five minutes after Dr. Krak began the procedure, Dr. Krak "suddenly stopped and informed plaintiff that he could not continue the procedure" because the canal way was calcified and Dr. Krak could not reach the root. *Id.* at ¶ 29. Dr. Krak then stopped the procedure and informed Plaintiff that he could either have his tooth pulled or have it filled with a temporary filling but the root canal could not be completed and ultimately his tooth would have to be pulled. *Id.* at ¶¶ 31-33. Plaintiff alleged that he asked Dr. Krak how the tooth calcified and Dr. Krak explained to Plaintiff that an old temporary filling was left in the tooth too long without finishing the filling which caused the calcification. Plaintiff alleged that it was "the practice of DOC employed dentist to attempt [to] convinc[e] inmates [to get] their teeth pulled out rather th[a]n fix the problem due to it being cheaper just to pull the tooth th[a]n to actually fix it." *Id.* at ¶ 34. Plaintiff alleged that after his procedure, he filed Grievance No. 487379 and complained that "his tooth was drilled on for 45 minutes in an erron[e]ous procedure that couldn't be finished and unnecessarily subjected him to a[]lot of pain subsequ[e]nt to plaintiff's dental concerns being neglected for months." *Id.* at ¶ 36.

Plaintiff further alleged in his complaint that Dr. Krak "was not proficient in his

3

professional duty to provide adequate dental care to plaintiff, nor did he adequately inform plaintiff of the procedure before plaintiff consented to having it done." *Id.* at ¶ 40. Plaintiff alleged that Superintendent Folino and Secretary Weztel had an "obligation to provide for the safety and health concerns of inmates like plaintiff by ensuring that staff and healthcare professionals at SCI Greene under his command were performing up to standard and not causing inmates an unnecessary risk of harm[,]" and that Superintendent Folino was aware of serious complaints "of negligence and incompetence" against Dr. Krak but "failed to conduct reasonable investigation or intervene[.]" *Id.* at ¶¶ 44-45. Plaintiff alleged that Officer Varner intentionally sabotaged final grievance responses so that inmates could not meet the court's exhaustion requirements. *Id.* at ¶¶ 48-52. Plaintiff alleged that the John Doe defendants failed to train, screen or supervise Dr. Krak, Superintendent Folino, Secretary Weztel and Officer Varner.

Plaintiff alleged, *inter alia*, that he suffered the loss of his top front teeth, and pain and mental anguish from suffering through a root canal procedure which could not be completed. Plaintiff asserted the following claims in his state court complaint: two deliberate indifference to serious medical needs in violation of the Eighth Amendment against Dr. Krak for his delayed medical care and allegedly negligent care in performing the "erroneous" root canal procedure; various Eighth Amendment claims against the remaining defendants for deliberate indifference, failure to intervene, failure to investigate, failure to screen and train, a First Amendment retaliation claim against Dr. Krak, Superintendent Folino and Secretary Weztel; an equal protection claim pursuant to the Fourteenth Amendment against Dr. Krak, Superintendent Folino and Secretary Wetzel, two claims for intentional infliction of emotional distress against all of the named defendants; a negligence claim against Dr. Krak; a conspiracy claim against Superintendent Folino, Secretary Wetzel and Officer Varner; and a due process violation pursuant to the

4

Fourteenth Amendment against Superintendent Folino, Secretary Wetzel and Officer Varner.

Plaintiff further alleged that he exhausted his administrative remedies with regard to the grievances that he filed. Plaintiff sought a declaration that his constitutional rights were violated, a preliminary and permanent injunction to provide Plaintiff with adequate medical care and to revise DOC policy to allow inmates housed in the RHU to receive dental care and monetary damages.

On or about June 23, 2015, after Plaintiff's state court complaint was filed, he was transferred to SCI Pittsburgh and the next day received a successful root canal on or about June 24, 2015. On July 20, 2015, the Court of Common Pleas of Greene County dismissed Plaintiff's state court case with prejudice. *See* State Court Order (ECF No 35 at 28). It is undisputed that Plaintiff did not file an appeal to the dismissal of his state court case.

    b. *The Present Federal Action*

On or about July 20, 2017 Plaintiff initiated the present action. In his amended complaint, he names as defendants the following: his attending dentist at SCI Greene Dr. Krak, Superintendent Folino of SCI Greene, Health Care Administrator Vihlidal of SCI Greene, Secretary of Corrections Wetzel, Grievance Officer Varner of Pennsylvania DOC, his attending dentist at SCI Frackville, Dr. Balas, Health Care Administrator Stanishefski of SCI Frackville, and the Bureau of Health Care Services at DOC.

According to Plaintiff's federal complaint, between April 10, 2013 and June 23, 2013, Plaintiff informed Dr. Krak through several sick calls and request slips that he was in extreme pain due to a loose filling in his tooth which allowed "stuff" to get inside of the hole in the tooth. Am. Compl. (ECF No. 35) at ¶ 10. Plaintiff alleges that he was denied treatment because he was "on movement restriction" until June 28, 2013. *Id*. at ¶ 11. Plaintiff asserts that the lack of treatment

5

caused his tooth to abscess and the tooth was extracted by Dr. Krak on June 28, 2013. Plaintiff alleges that the "standard practice for [a] dentist [is] to first treat the infection to see if the tooth can be saved[,] before considering e[]xtraction as an option." *Id*. at ¶ 14. Plaintiff asserts that Dr. Krak has a practice of extracting inmate's teeth instead of employing "alternative procedures" to save the tooth. *Id*. at ¶ 15.

Plaintiff alleges he was again seen by Dr. Krak on July 5, 2013 for a root canal procedure. During the procedure, Dr. Krak informed Plaintiff that he could not finish the procedure because there was "calsification in the canal way that was prohibiting him from reaching the root and if he continued any further that plaintiff could be hurt in the process." *Id*. at ¶ 17. Plaintiff asked Dr. Krak how a tooth builds calsification, to which Dr. Krak purportedly responded it was due to a temporary tooth filling being left in too long without finishing the filling. At that time, Dr. Krak informed Plaintiff that he could either place in a permanent filling or extract the tooth, but the tooth would ultimately need to be pulled to not cause issues for Plaintiff's remaining teeth. Plaintiff requested that a filling be placed in his tooth. Plaintiff alleges that he filed grievances regarding Dr. Krak's conduct which were denied.

Plaintiff asserts that between July 5, 2013 and December 6, 2013, he experienced daily facial pain, blinding headaches, blurred vision and loss of sleep due to his tooth. He alleges that he "wrote several complaints of pain" to Dr. Krak which were unanswered until he wrote "request slips and letters to defendants Wetzel, Vihlidal, the Office of Special Investigations and Intelligence as well as almost every member of administration at SCI Greene." *Id*. at ¶ 26. On December 6, 2013, Plaintiff presented to Dr. Krak for his tooth pain. Plaintiff alleges that Dr. Krak was antagonistic to him and told Plaintiff to buy Tylenol from the commissary and put a warm compress on his face for the pain.

Plaintiff was transferred to SCI-Albion on December 26, 2013, where he also complained about tooth pain, but was told he should continue taking Tylenol and Mobic. Plaintiff alleges that the dental personnel at SCI Albion did not do anything about his tooth pain and reasserted that Dr. Krak said it should be extracted.

Plaintiff was transferred to SCI-Frackville on October 1, 2014, and seen by dental staff on June 4, 2015 who Plaintiff claims tried to convince him to extract his tooth "instead of fix[ing]" his tooth. *Id.* at ¶ 39. Plaintiff denied the extraction and was made to sign a waiver.

On June 23, 2015, Plaintiff was transferred to SCI-Pittsburgh and received a successful root canal on June 24, 2015.

In his federal complaint, Plaintiff asserts the following claims:

(1) A First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against all of the named defendants;

(2) An Eighth Amendment deliberate indifference claim pursuant to 42 U.S.C. § 1983 against all named defendants;

(3) A Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendants Dr. Krak, Dr. Balas, Health Care Administrators Vihlidal and Stanishefski and the Bureau of Health Care Services;

(4) A negligence claim against Defendants Dr. Krak, Dr. Balas, Health Care Administrators Vihlidal and Stanishefski and the Bureau of Health Care Services;

(5) A "malpractice" claim against Defendants Dr. Krak, Dr. Balas, Health Care Administrators Vihlidal and Stanishefski and the Bureau of Health Care Services (ECF No. 35 at p. 20);

(6) A civil conspiracy claim against all named defendants;

(7) An "Article I Section 13 violation" ostensibly pursuant to the Pennsylvania Constitution against Defendants Dr. Krak, Dr. Balas, Health Care Administrators Vihlidal and Stanishefski and the Bureau of Health Care Services (ECF No. 35 at p. 21); and

(8) An "Article I Section 26 violation" ostensibly pursuant to the Pennsylvania constitution against Defendant Bureau of Health Care Services.

Defendants now move to dismiss Plaintiff's complaint.

### III. STANDARD OF REVIEW

    *a. Pro Se Litigants*

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

*b. Federal Rule of Civil Procedure 12(b)(6)*

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to

relief. *Twombly*, 550 U.S. at 563 n.8.

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's complaint by arguing that: (1) Plaintiff's claims are time barred; (2) the *Rooker-Feldman* doctrine bars Plaintiff's claims; (3) the doctrine of *res judicata* bars Plaintiff's claims; (4) the Bureau of Health Care Services is not a "person" for section 1983 purposes; and (5) that Plaintiff's claims are barred by the Eleventh Amendment. Each argument will be addressed in turn.

### a. Statute of Limitations

First, Defendants argue that Plaintiff's claims are time barred. In section 1983 actions, the statute of limitations is borrowed from the general personal injury statute of limitations of the state in which it sits. *See Owens v. Okure*, 488 U.S. 235, 249–51 (1989). In Pennsylvania, the statute of limitations for personal injury actions is two years. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (citing 42 Pa. Cons. Stat. § 5524(7)). Therefore, Plaintiff had two years from the time his cause of action accrued to file his complaint. A cause of action under section 1983 accrues when a plaintiff knew or should have known that his rights were violated. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). In other words, a cause of action accrues when "the first significant event necessary to make the claim suable" occurs. *Lake v. Arnold*, 232 F.3d 360, 366 (3d Cir. 2000). *See also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) ("a claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury."). Generally, "[t]he running of statute of limitations is an affirmative defense" *Wisniewski v. Fisher,* 857 F.3d 152, 158 (3d Cir. 2017), and a district court can only dismiss a prisoner's section 1983 claims on this basis if "it is clear from the face of the complaint that there are no meritorious tolling

issues[.]" *Jackson v. Rodriguez*, 728 Fed. Appx. 78, 79 (3d Cir. 2018) (unpublished) (quoting *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009) (parenthetical citations omitted)).

Under the federal Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, the statute of limitations applicable to section 1983 actions are tolled while the prisoner exhausts the administrative remedies available to him. *Wisniewski,* 857 F.3d at 158. *See also Carter v. Pennsylvania Dept. of Corrections*, CIV A 08-0279, 2008 WL 5250433, at *11 (E.D. Pa. Dec. 17, 2008) ("[T]he statute of limitations begins to run only when [a] plaintiff has exhausted his administrative remedies under the PLRA.").

Here, Defendants argue that Plaintiff's claims are time-barred because Plaintiff's complaint focuses on actions that occurred in 2013 through 2015. Defendants argue that because Plaintiff did not file the action until July 20, 2017, and all of Plaintiff's claims are based upon events that occurred before July 20, 2015, his claims are barred by the two-year statute of limitations prescribed to his Section 1983 and state law claims. Defendants further argue that Plaintiff knew of his injury by at least May 2015, when he filed his lawsuit in the Court of Common Pleas of Greene County recounting essentially the same claims he asserts here.

Plaintiff responds that he did not discover all of the facts giving rise to his claims in this case until at least June 25, 2015, when he received the root canal procedure in SCI Pittsburgh and that Defendants had led him to believe his tooth was irreparable until that point. Further, Plaintiff responds that he had not fully exhausted his claims under the grievance process, and his grievance was not fully exhausted until October 6, 2015. Plaintiff argues that because a statute of limitations is tolled while the prisoner exhausts his grievance, and because he filed his suit here by July 2017, his claims are timely.

Plaintiff filed the present action on July 20, 2017, but the PLRA is clear that a prisoner

11

must exhaust all administrative remedies prior to filing suit and that the statute of limitations is tolled during that time frame. Although some of the actions that Plaintiff complains of occurred more than two years prior to the filing of his complaint, the statute of limitations was tolled during the time Plaintiff exhausted his grievances which complained of his allegedly inadequate dental care. Accordingly, it cannot be determined from the face of the complaint alone whether the statute of limitations bars Plaintiff's claims and Defendants' motion is denied in this respect. While Defendants also argue that Plaintiff's prior suit is evidence that Plaintiff knew or should have known of his injuries by at least May 2015 when he filed his state court suit – and because he did not file this suit until July 2017, it is time barred – the court cannot make such a determination at the motion to dismiss stage considering the interplay between Plaintiff exhausting his grievances and the tolling which occurs during that process. Accordingly, Defendants' motion is denied on those grounds.

### b. Rooker-Feldman Doctrine[2]

Next Defendants argue that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. A motion to dismiss invoking the *Rooker-Feldman* doctrine is a factual challenge to the court's subject matter jurisdiction. *Calipo v. Erie County Prison*, CV 16-198, 2017 WL 1316367, at *2 (W.D. Pa. Apr. 10, 2017) (citations omitted); *Slavko Properties, Inc. v. T.D. Bank, N.A.*, CIV.A. 14-05045, 2015 WL 1874233, at *4 (E.D. Pa. Apr. 24, 2015) (collecting cases). The *Rooker-*

---

[2] Defendants do not move to dismiss Plaintiff's complaint under Rule 12(b)(1), nor do they reference the lack of this court's jurisdiction at any point in their briefing, although a challenge under *Rooker-Feldman* is a factual jurisdictional challenge under Rule 12(b)(1). *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *McCurdy v. Esmonde*, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003). Because it is clear that the *Rooker-Feldman* doctrine was not fully briefed and further has no application in this case, the court will not belabor the standard of review afforded to factual jurisdiction challenges.

*Feldman* doctrine "is a 'narrow doctrine' that 'applies only in limited circumstances.' " *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Lance v. Dennis*, 546 U.S. 459, 464–66, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)). The *Rooker-Feldman* doctrine "is restricted to cases where four requirements are met: (1) the federal plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state-court judgment, (3) that judgment issued before the federal suit was filed, and (4) the plaintiff invites the district court to review and reject the state-court judgment." *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018) (citations and internal quotations omitted).

The court finds it hard-pressed to find that Defendants have adequately briefed this issue and further how it applies in this situation. Defendants do not explain in their brief what claims Plaintiff raised in the state court action, how they relate to the claims asserted here and how the *Rooker-Feldman* doctrine applies here. Defendants do not address to the four-part test promulgated by the Court of Appeals for the Third Circuit set forth *supra*, nor do they explain how it applies here. Instead, the entirety of Defendants' argument is that Plaintiff "is asking this Court to review the previous state court proceeding . . . and conclude the ruling made in that matter was wrong[,]" and that the claims are "identical or substantially similar" to each other are were previously dismissed with prejudice. Defs.' Br. in Supp. of Mot. to Dismiss (ECF No. 39) at 7-8. Instead of explaining how the claims in the state court action are "identical or substantially similar" to the claims raised here, Defendants attached the state court complaint as an exhibit to its brief and referred the court to it. The court can not divine counsel's position from a document passively incorporated into his brief by reference where counsel has made no attempts to explain its application. Even if Defendants adequately briefed this issue, the *Rooker-Feldman* doctrine is inapplicable in the instant case. The *Rooker-Feldman* doctrine only applies where the state court

13

loser is complaining of injuries caused by the state court judgment. Plaintiff does not allege at any point in his present complaint that the state court judgment caused him injury. Accordingly, Defendants' motion to dismiss is denied in this respect.

### c. *Res Judicata (Claim Preclusion)*

Defendants next argue that Plaintiff's complaint is barred by the doctrine of *res judicata*. Defendants argue that because the state court action that was asserted by Plaintiff regarding the same set of facts as alleged here was dismissed by the state court with prejudice, that the present action is barred by the doctrine of *res judicata*. While *res judicata* is an affirmative defense, it may be presented by a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if it is apparent from the face of the complaint that it applies. *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The doctrine of *res judicata* bars suit where "there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *U.S. v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009). The court takes a "broad view of what constitutes the same cause of action" and "res judicata . . . turn[s] on the essential similarity of the underlying events giving rise to the various legal claims." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir.2010) (quoting *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir.1999)).

Again, instead of fully briefing the issue, Defendants essentially ask this court to construct their argument for them. Defendants do not explain what claims Plaintiff raised in the state court action, how those claims relate to the claims asserted in the present action; what parties were named in the state court case versus the parties named in the present complaint; whether plaintiff's theory of recovery is the same here as it was in the state court action; or, most importantly, explain at all how the material facts alleged here are the same as Plaintiff raised in the state court case. *See*

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (the court should consider (1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . ; and (4) whether the material facts alleged are the same.) (citations omitted)). Instead, Defendants argue, *in toto*, that "Plaintiff's claims brought against [the Defendants] are identical to the claims brought in the previous action filed in the state court. Those claims were dismiss[sic] **with prejudice** by the Common Pleas Court on July 20, 2015. No proper appeal was taken from that dismissal. Clearly, the pending claims against these Defendants are barred by the doctrine of *res judicata*. However, all of the claims pending in the instant action could have been raised in the earlier proceeding and, therefore, *res judicata* bars those claims as well. . . . In the present action, Plaintiff's claims are based on alleged wrongs occurring between 2013 and June 2015. Plaintiff filed his prior suit in mid-May 2015. At that time, Plaintiff could have asserted all of the present claims in the state court action, but chose not to do so." Def.'s Br. in Supp. of Mot. to Dismiss (ECF No. 39) at 9-10 (emphasis in original). Again, attaching the Plaintiff's state court complaint to Defendants' motion to dismiss and simply referencing it in passing and not explaining its application does not bring the issues properly before the court. Such generalizations without citation to the record or any facts alleged in this case or in the state court case will not be recognized as properly brought before the court for consideration, and Defendants' motion is denied in this respect.

While the court will deny Defendants' motion to dismiss on the basis of *res judicata* at this juncture, from a cursory reading, it appears that the allegations made in Plaintiff's state court complaint and the allegations set forth in Plaintiff's federal complaint overlap. Because *res judicata* is a threshold issue that should be decided prior to addressing the merits of Plaintiff's

claims, the court will first allow discovery solely to determine whether *res judicata* bars Plaintiff's instant federal complaint. After that period of discovery, Defendants shall file a motion for summary judgment solely on the issue of *res judicata*. Defendants' shall fully brief this issue by addressing all applicable law and setting forth all facts upon which they rely. Should the court determine that the case survives summary judgment on the basis of *res judicata*, the court will allow another period of discovery on the merits of Plaintiff's remaining claims.

    d. *"Person" under 42 U.S.C. § 1983*

Next, Defendants argue that the Bureau of Health Care Services is not a "person" for purposes of section 1983 and should be dismissed with prejudice.

42 U.S.C. § 1983 provides private citizens a cause of action for violations of federal law by state officials. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Therefore, in order to state a claim under section 1983, a plaintiff must adequately allege a "violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Therefore, liability under section 1983 is limited to "persons" who violate constitutional rights. A state or state agency is not a person under section 1983 and are not subject to suit under section 1983. *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991). Likewise, neither a prison, nor a prison department falls within the "person" requirement of section 1983. *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (holding that the New Jersey Prison Medical Department was not a "person" under 42 U.S.C. § 1983). The section 1983 claims against

the Bureau of Health Care Services must be dismissed with prejudice, as it is not a person under section 1983. Accordingly, Defendants' motion to dismiss is granted in this respect and Plaintiff's claims made pursuant to section 1983 against Defendant Bureau of Health Care Services are dismissed with prejudice as amendment would be futile.[3] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (civil rights plaintiffs bringing section 1983 actions should be given leave to amend unless doing so would be "inequitable or futile.").

    *e. Eleventh Amendment Immunity*

Lastly, Defendants argue that the Eleventh Amendment bars Plaintiff's claims against any Defendant named in their official capacity and the Bureau of Health Care Services.

The Eleventh Amendment is akin to a jurisdiction bar to suits against states, its agencies and state officials in federal court, unless certain exceptions apply. *Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (the "Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court[.]"). Those exceptions have been delineated as: (1) where Congress has abrogated the state's immunity; (2) where the state has waived its own immunity; or (3) the plaintiff sues against an individual state officers for prospective relief to end an ongoing violation of federal law. *MCI Telecommunication Corp. v. Bell A. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). Section 1983 does not abrogate a state's Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 332-40 (1979), and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000); 42 Pa. Const. Stat. Ann. § 8521(b).

---

[3]     This includes Counts I, II, III and IV, to the extent that Plaintiff is asserting a conspiracy claim under section 1983.

In the instant matter, any individual Defendant sued in their official capacity for monetary damages (Dr. Krak, Superintendent Folino, Administrator Vihlidal, Secretary Wetzel, Officer Varner, Dr. Balas, and Administrator Stanishefski) are immune from suit under the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). Thus, the official capacity claims for damages against those defendants is dismissed with prejudice, as amendment would be futile.[4] *Fletcher-Harlee Corp.,* 482 F.3d at 251.

Likewise, Defendants are correct that the Bureau of Health Care Services is an arm of the Pennsylvania Department of Corrections which is a state agency and any claim for damages against the Bureau of Health Care Services is barred by the Eleventh Amendment. *See e.g., Montilla v. Prison Health Services, Inc.*, CIV.A. 11-2218, 2011 WL 4467712, at *6 (E.D. Pa. Sept. 23, 2011), *aff'd*, 457 Fed. Appx. 212 (3d Cir. 2012) (unpublished); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Thus, all claims for damages against the Bureau of Health Care Services are dismissed with prejudice, as amendment would be futile.[5] *Fletcher-Harlee Corp.,* 482 F.3d at 251.

Plaintiff responds that because he alleged a claim for injunctive relief, the Eleventh Amendment does not apply. Courts have read a limited exception into the Eleventh Amendment for those actions seeking prospective injunctive relief. *Ex parte Young*, 209 U.S 1232 (1908). Plaintiff's claim for injunctive relief is asserted exclusively against Secretary Wetzel and seeks "a preliminary and permanent injunction order [that] defendant Wetzel revise the 13.2.1 policy to reflect that inmates shall not be denied appropriately adequate health care by any health care staff

---

[4] These claims include Counts I through VII insofar as Plaintiff is asserting official capacities claims against them. Plaintiff's claims made against these Defendants in their individual capacity remain.

[5] All of Plaintiff's claims against the Bureau of Health Care Services are dismissed with prejudice.

or [illegible] from receiving said care by any personnel especially in cases of the inmate needing emergency care due to pain ect.[sic]. Also that each facility will be operating to this standard." Pl.'s Am. Compl. (ECF No. 35) at p. 24.

Because Defendants did not raise the issue of Plaintiff's request for injunctive relief against Secretary Wetzel in his individual capacity and how that applies to Eleventh Amendment immunity, the court finds that this issue is not fully briefed and to the extent that Defendant Wetzel sought dismissal of Plaintiff's claim for injunctive relief against Defendant Wetzel in his individual capacity under Eleventh Amendment immunity, the motion is denied in that respect.

V. **CONCLUSION**

Based on the foregoing, Defendants' motion is granted in part and denied in part. Defendants' motion is granted insofar as all claims made against individual defendants in their official capacities (Claims I through VII against Defendants Dr. Krak, Superintendent Folino, Administrator Vihlidal, Secretary Wetzel, Officer Varner, Dr. Balas, and Administrator Stanishefiski) are dismissed with prejudice. Those claims remain against those Defendants in their individual capacities. Defendants' motion is further granted insofar as all claims made against the Bureau of Health Care Services are dismissed with prejudice. Defendants' motion is denied in all other respects.

An appropriate Order follows.


Dated: November 8, 2018

By the Court,
s/ Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc: KHALIL HAMMOND
KC 9993
SCI Fayette
48 Overlook Drive
LaBelle, PA 15450

All counsel of record via CM/ECF electronic filing