IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| KHALIL HAMMOND, | ) | |
| | ) | |
| Plaintiff, | ) | 2:17-CV-00952-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN E. WETZEL, SECRETARY OF | ) | |
| CORRECTIONS; DORINA VARNER, | ) | |
| CHIEF GRIEVANCE OFFICER; DR. | ) | |
| BALAS, D.M.D.; AND VICTORIA | ) | |
| STANISHEFSKI, HEALTH CARE | ) | |
| ADMINISTRATOR; | ) | |
| | ) | |
| Defendants, | ) | |

**<u>MEMORANDUM OPINION[1]</u>**

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.     INTRODUCTION

Plaintiff Khalil Hammond initiated the present action alleging that his civil rights were violated when he was given unconstitutionally substandard dental care while in the custody of Pennsylvania Department of Corrections ("DOC").  He names his treating dentist, Dr. Balas, as a Defendant as well as several DOC officials: John B. Wetzel, Secretary of Corrections; Dorina Varner, Chief Grievance Officer; and Victoria Stanisehski, Health Care Administrator (collectively "Corrections Defendants").  Presently for disposition is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 175.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  For the reasons

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

that follow, Defendants' motion for summary judgment is granted.

## II.    BACKGROUND

Plaintiff is an inmate currently in the custody of the Pennsylvania Department of Corrections at the State Correctional Institution at Greene ("SCI Greene").  He initiated the present civil rights complaint *pro se* on or about July 20, 2017.  Defendants moved for summary judgment, which this Court granted on March 20, 2020.  Plaintiff filed an appeal with the Court of Appeals for the Third Circuit and on August 30, 2021, the Court of Appeals issued a non-precedential Opinion that affirmed in part, vacated in part and remanded the matter for further proceedings.  In particular, the Court of Appeals held that:

> We will vacate the District Court's judgment to the extent that it denied Hammond's claims related to his dental treatment, or lack thereof, at SCI Frackville, and will remand the matter for further proceedings.  We express no opinion on the merit of those claims.

Opinion (ECF No. 157-1) at 6-7 (footnote omitted); *Hammond v. Krak*, No. 20-1850, 2021 WL 3854763, at *3 (3d Cir. Aug. 30, 2021).  Therefore, the only remaining claim against Defendants is an Eighth Amendment deliberate indifference claim pursuant to 42 U.S.C. § 1983 for the allegedly inadequate dental treatment Plaintiff received at SCI Frackville.

Upon remand, this Court allowed for the parties to conduct a period of discovery and entered a briefing schedule for the pending motion for summary judgment.  While the Court has given Plaintiff several opportunities to submit a response to Defendants' motion for summary judgment, he has failed to do so.  Therefore, the motion for summary judgment will be decided without the benefit of Plaintiff's response.

### a.    Plaintiff's Dental Treatment

Plaintiff was experiencing dental issues while housed at SCI-Greene in 2013 and although Plaintiff was provided treatment by the dentist at SCI-Greene, he continued to have dental issues.

Defs.' Statement of Material Facts ("Defs.' SMF") ECF No. 177 at ¶¶ 9-10. Plaintiff was transferred from SCI-Greene to SCI-Albion on December 26, 2013 and subsequently transferred from SCI-Alboin to SCI-Frackville on October 1, 2014. *Id*. at ¶¶ 12-13. Dr. Balas conducted a chart review for Plaintiff when Plaintiff first arrived at SCI-Frackville in October 2014 and did not note any emergent or urgent issues and to his knowledge Plaintiff did not seek a dental appointment at that time. *Id*. at ¶¶ 13-14. Dr. Balas was not involved in the administrative aspects of reviewing request slips or scheduling inmates for dental examinations or appointments, and he did not see any request slips submitted by Plaintiff prior to May 2015. *Id*. at ¶¶ 15-16.

Dr. Balas became aware that efforts were made to bring Plaintiff to the Dental Clinic at SCI-Frackville on May 12, 2015 and June 2, 2015 without success. *Id*. at ¶ 17. On June 4, 2015, Plaintiff was brought to the Dental Clinic and reported he was having pain in the upper right quadrant of his mouth, pointing to the #5 tooth. *Id*. at ¶¶ 18-19. Dr. Balas noted that Plaintiff had previous work done in this area, including an extraction of the #4 tooth. *Id*. at ¶ 20. Dr. Balas then conducted an oral examination of Plaintiff's teeth and based on this examination, he noted and advised Plaintiff that he had concerns with the #5 tooth, indicated it would need to be treated and that he had concerns about the viability of the tooth and recommended that the #5 tooth be extracted. *Id*. at ¶¶ 21-22. Plaintiff responded that he did not want the tooth extracted and declined that course of treatment. *Id*. at ¶ 23. Plaintiff requested medication for his pain and Dr. Balas again advised that extraction of the #5 tooth would alleviate his pain, and also contacted medical staff at SCI-Frackville so that pain medication could be provided to Plaintiff on an as-needed basis. *Id*. at ¶ 24. Dr. Balas's June 4, 2015 chart entry for Plaintiff's appointment reads in full as follows:

> IM escorted from RHU Annex;
> c/o pain URQ above #5 (points); see previous entries; #4 is missing and was extracted in June 2013 due to failed RCT; CF reveals < 1 mm sinus-tract-like lesion on the gingual crest midway between #3 and #5; The tiny lesion is tender to pressure

3

[with] a dental instrument, the lesion is unable to be probed with either a perio probe or gutta percha; #5 has an existing intact alloy, it is (++) sensitive to percussion, Millers mobility, +tr, no signs of a sinus tract from #5 on buccal or is I /o swelling noted; buccal plate tenderness to digital palpitation noted lateral to #5; PAX reveals inconclusive evidence of possible root tips #4 & #5 has a definitive PARL perio p[robe] d[epths] W[inthin] N[ormal] L[imits] [with] BOP noted tenderness [with] perio probing; PAX reveals extent of alloy and apparent ZOE repair material at or within 2mm of the alveolar crest; crown:root ratio is at best 1:1; CI: #5 – acute apical symptomatic periodontitis; do not advise further attempts at endo based on previous deterrents of likely calcified canals; crown:root ratio is unfavorable when added to poor operative prognosis; advised extraction to alleviate pain; would then re-assess for resolution of sinus tract lesion region #4 gingual prior to pursuit of retained roots;

IM refused extraction signed DC462E, stated he does not want to be without more teeth and also declined eventual prosth stating he is "too young' for dentures; he wants to wait until he gets out to get implants; IM only wants analgesics to manage pain; informed IM that pain meds are only palliative and not curative; extraction is eh definitive cure; consulted [with] medical staff; Med. Provider put analgesics into Sapphire for distribution prn; IM to write if he wants extraction; IM rather cooperative and erythmic and departed clinic [without] event

*Id*. at ¶ 25.

After Plaintiff's appointment, Dr. Balas contacted his supervisor, Dino R. Angelici, DMD, and advised him of Plaintiff's issues. *Id*. at ¶ 26.  Dr. Angelici is currently employed by the DOC as the Dental Administrator at DOC's Central Office. *Id*. at ¶ 27.  At one point, Dr. Angelici was stationed at SCI-Pittsburgh and supervised the dental office there and provided patient care. *Id*. at ¶ 29.  The SCI-Pittsburgh dental office treated inmates from other parts of the state system who had difficult dental conditions and/or were difficult for other DOC dentists to manage. *Id*. at ¶ 30.  Dr. Angelici was advised by Dr. Balas of concerns with Plaintiff's #5 tooth and that Dr. Balas recommended extraction but Plaintiff refused treatment. *Id*. at ¶ 32.  Dr. Angelici reviewed Plaintiff's dental records and discussed Plaintiff's case with Gary C. Mangieri, DMD, another DOC dentist assigned to SCI-Pittsburgh. *Id*. at ¶ 34.  While Dr. Angelici did not disagree with Dr. Balas's assessment and prescribed course of treatment, after consulting Dr. Mangieri, Dr. Mangieri agreed to see Plaintiff to determine whether the #5 tooth could be treated without extraction. *Id*. at

¶ 35.

On June 23, 2015, Plaintiff was transferred from SCI-Frackville to SCI-Pittsburgh to be given dental care at SCI Pittsburgh. *Id*. at ¶¶ 36-38.  Plaintiff had a dental appointment with Dr. Mangieri and through a complicated procedure, Dr. Mangieri was able to address the issues with Plaintiff's #5 tooth without extraction. *Id*. at ¶ 40.  Plaintiff was then returned to SCI-Frackville on June 25, 2012. *Id*. at ¶ 41.

> b.  *Plaintiff's Grievance 574095*

Plaintiff filed Inmate Grievance No. 574-05 on June 26, 2015 and an Initial Review Response was provided to the grievance by Defendant Stanishefski, the Corrections Health Care Administrator at SCI-Frackville on July 21, 2015. *Id*. at ¶¶ 42-43.  The Initial Review Response detailed the dental care and treatment Plaintiff received and concluded that "[t]here were no delays or negligence" associated with his treatment and the grievance was denied. *Id*. at ¶ 44.  Plaintiff appealed to the Facility Manager, which was addressed by an appeal response on August 4, 2015 which upheld the Initial Review Response. *Id*. at ¶ 45.

Plaintiff then filed a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *Id*. at ¶ 46.  On September 2, 2015, SOIGA referred the grievance appeal to the DOC's Bureau of Health Care Services for review and Dr. Angelici was assigned to provide the Bureau of Health Care Services' response to SOIGA. *Id*. at ¶ 48.  In the review, Dr. Angelici noted that Dr. Balas identified the issue that was causing Plaintiff pain and offered an appropriate course of treatment, which Plaintiff refused. *Id*. at ¶ 49.  The review further stated that Dr. Balas nevertheless brought the case to Dr. Angelici's attention and Dr. Angelici arranged for Hammond's transfer to SCI-Pittsburgh where Dr. Mangieri was able to successfully complete a difficult dental procedure by which he was able to save the tooth. *Id*. at ¶ 50.  Therefore, Dr. Angelici concluded

that Plaintiff was provided with appropriate dental care and treatment for his issues which at SCI-

Frackville. *Id*. at ¶ 51.   The Bureau of Health Care Services subsequently responded to Dorina

Varner, the Chief Grievance Officer, on September 15, 2015 stating in pertinent part that:

> The Bureau of Health Care Services has reviewed the dental record and
> communicated with the treatment dentists.  Based upon all of this information, the
> Bureau of Health Care Services has determined the dental care provided/offered
> was reasonable and appropriate.  From the outset, Mr. Hammond was offered
> treatment which would have alleviated the problems he was experiencing. H[e]
> chose to decline that care, which led to the delay he experienced. Ultimately, the
> difficult treatment he received at SCI-Pittsburgh was successful and saved the
> tooth.

*Id*. at ¶ 52.

SOIGA thereafter issued a Final Appeal Decision on or about October 6, 2015 which

upheld their prior responses that:

> Your concern of not being provided proper dental care was reviewed by the staff of
> the Bureau of Health Care Services.  They reviewed the dental record and
> communicated with the treating dentists. Based upon all of this information, the
> BHCS has determined the dental care provided/offered was reasonable and
> appropriate. From the outset, you were offered treatment which would have
> alleviated the problems you were experiencing.  You chose to decline that care,
> which led to the delay you experienced.  Ultimately, the difficult treatment you
> received at SCI Pittsburgh was successful and saved the tooth.  You are encouraged
> to participate in your treatment plan and discuss your concerns with a practitioner.
> Therefore, your grievance appeal to this office is denied as well as your requested
> relief.

*Id*. at ¶ 53.

### III.    STANDARD OF REVIEW

A *pro se* pleading is held to a less stringent standard than more formal pleadings drafted

by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines

v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). As a result, a pro se complaint

under § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir.

2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)

(citations omitted). While *pro se* litigants are afforded this leniency, they "do not have a right to general legal advice from judges," and "courts need not provide substantive legal advice to pro se litigants" because pro se litigants must be treated "the same as any other litigant." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *U. S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner ... may be inartfully drawn and should be read "with a measure of tolerance")).

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

A plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

## IV.   DISCUSSION

### a.   *Corrections Defendants' Personal Involvement*

Corrections Defendants argue that Plaintiff has failed to provide evidence of any personal involvement of John E. Wetzel, then-Secretary of Corrections, Dorina Varner, the DOC's Chief Grievance Officer, and Victoria Stanishefski, the Corrections Health Care Administrator at SCI-Frackville.

To establish personal liability against a defendant in a section 1983 action, the defendant must have personal involvement in the alleged wrongs. That is, the state actor must have played an affirmative part in the alleged misconduct to be subject to liability. *Rizzo v. Goode*, 423 U.S. 362, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976); *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In other words, a prison official is personally involved in an alleged civil rights violation if it is alleged he

8

personally directed the acts resulting in the violation or actually knew of the violation and acquiesced. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Corrections Defendants are correct that there is no evidence of record showing they had the requisite personal involvement in connection with Plaintiff's alleged civil rights violations. The record is undisputed that the only involvement Defendants Varner and Stanishefski had in connection with Plaintiff's dental treatment related to responding to the grievance and appeals he filed. Receiving and reviewing grievances do not establish personal involvement under section 1983. *See Plummer v. Wellpath*, No. 23-1637, 2023 WL 4181620, at *2 (3d Cir. June 26, 2023) (citing *Rode*, 845 F.2d at 1207–08.

As for former-Secretary Wetzel, the record is clear that he did not have any personal involvement with respect to Plaintiff's dental treatment. Plaintiff seemingly seeks to hold former-Secretary Wetzel liable simply because of his supervisory status. Despite this argument, "liability cannot be predicated solely on the operation of respondeat superior." *Rode*, 845 F.2d at 1207.

Accordingly, as the record is undisputed that Corrections Defendants lacked the requisite personal involvement for Plaintiff's section 1983 claims, Corrections Defendants are entitled to summary judgment.

### b. Dr. Balas and Deliberate Indifference

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prisoner officials that indicate deliberate

indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious.").

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.*

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). When a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id.* Even so, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer v. O'Carroll*, 991 F.2d 64, 64 (3d Cir. 1993); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").  A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Monmouth Cnty. Corr. Institutional Inmates*, 834 F.2d at 346. Indeed, "[m]ere medical

malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner . . . do not constitute deliberate indifference to serious medical needs." *Lopez v. Corr. Med. Servs., Inc.*, 499 F. App'x 142, 146 (3d Cir. 2012) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)). The key question is whether the defendant has provided the inmate with some type of treatment, no matter if it is what the inmates desires. *See e.g.*, *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

Here, it will be assumed that Plaintiff's medical need was serious since Dr. Balas diagnosed a treatment plan for Plaintiff. However, the record is undisputed that Dr. Balas was not deliberately indifferent to Plaintiff's serious medical needs. Dr. Balas met with Plaintiff on June 4, 2015 and provided Plaintiff with a thorough dental examination and identified the issue with Plaintiff's #5 tooth. Dr. Balas explained that Plaintiff's #5 tooth was not a good candidate for another root canal because he had concerns with the remaining crown to root structure and their viability and believed the only definitive treatment to relieve Plaintiff's pain was extraction. Exercising his professional judgment, Dr. Balas therefore recommended that the tooth be extracted, and Plaintiff refused this course of treatment. Dr. Balas provided Plaintiff with treatment by recommending that the tooth be extracted, regardless of whether Plaintiff agreed with that course of treatment. Therefore, Dr. Balas was not deliberately indifferent to Plaintiff's serious medical needs by recommending that Plaintiff's tooth be extracted. Plaintiff's disagreement with Dr. Balas's recommended course of treatment does not constitute deliberate indifference as a matter of law.

To the extent that Plaintiff argues that Dr. Balas was deliberately indifferent by delaying his eventual dental treatment at SCI-Pittsburgh, the record does not support such a finding. To the contrary, just after Dr. Balas treated Plaintiff on June 4, 2015, he reported Plaintiff's case to his

supervisor to see if anything else could be done for Plaintiff and arrangements were made for Plaintiff to be transferred to SCI-Pittsburgh from SCI-Frackville and he underwent the complicated dental procedure approximately twenty days later on June 24, 2015.  There is no evidence that Dr. Balas intentionally delayed Plaintiff's dental care, or delayed Plaintiff's care for a non-medical reason, and instead the record reflects the Dr. Balas immediately referred Plaintiff for alternative dental care, which he later received that successfully resolved Plaintiff's dental problems with his #5 tooth.  At most, the record demonstrates a difference in medical opinion which does not establish deliberate indifference as a matter of law. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor.  There may, for example, be several acceptable ways to treat an illness.") (emphasis in original).  Accordingly, Dr. Balas is entitled to summary judgment.

## V.    CONCLUSION

For these reasons, Defendants' motion for summary judgment is GRANTED. An appropriate Order follows.

Dated: August 22, 2023.                                                  By the Court,
                                                                         s/ Cynthia Reed Eddy
                                                                         United States Magistrate Judge

cc:    Khalil Hammond
       KC-9993
       SCI-Greene
       169 Progress Drive
       Waynesburg, PA 15370
       *via first-class mail*

       Attorney(s) of record

*via CM/ECF electronic filing*